NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0018n.06

No. 24-1379

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. STATE OF MICHIGAN, et al., | ) ) ) | **FILED** |
| Plaintiffs, | ) ) | Jan 15, 2025 |
| | ) | KELLY L. STEPHENS, Clerk |
| UNITED STATES OF AMERICA ex rel. MICHAEL ANGELO; MSP WB, LLC, | ) ) ) | |
| | ) | ON APPEAL FROM THE |
| Relators-Appellants, | ) ) | UNITED STATES DISTRICT COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | OPINION |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et. al., | ) ) ) | |
| Defendants-Appellees. | ) ) ) | |

Before: McKEAGUE, GRIFFIN, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Qui tam relators MSP WB, LLC and Michael Angelo sued 316 private insurers and an insurance-industry service provider, Insurance Services Office, Inc., purportedly on behalf of the United States of America and several states. Relators alleged that Defendants had engaged in a scheme to defraud Medicare and Medicaid in violation of the False Claims Act and related state false claims acts. Defendants moved to dismiss Relators' first amended complaint. The district court granted the motion, denied Relators leave to file a second amended complaint, and dismissed the case. Relators now appeal. For the reasons stated, we AFFIRM.

I.

In some circumstances, "an individual who has incurred medical expenses can lawfully seek recovery from more than one insurer." *United States ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 445 (6th Cir. 2024). This is also true when one of those insurers is Medicare. *Id.* In the past, Medicare paid first (as the "primary payer"), while the private insurer would take care of the rest (as the "secondary payer"). *Id.* at 445–46. The Medicare Secondary Payer Act of 1980 flipped those roles, making the private insurer the primary payer, and Medicare or a non-governmental Medicare Advantage Organization (MAO) the secondary payer.[1] *Id.* "An MAO is a private, for-profit company that contracts with [the government] to provide medical coverage, based on a capitated (or fixed) monthly payment per enrollee (rather than fees for specific services)." Joint Appellees Br. at 6.

Even though Medicare is the secondary payer, Congress authorized Medicare to pay "expenses up front" when the primary payer does not "promptly meet its obligations," "so long as the primary payer eventually reimburses Medicare for any amounts it overpaid." *Allstate*, 106 F.4th at 446 (citation omitted). This might happen, for example, when the "primary payer is contesting its liability to cover an incurred expense." *Id.* "To ensure that Medicare does, in fact, get reimbursed for payments it fronts for a primary payer, the Medicare Secondary Payer Act authorizes the government to sue the primary payer when the primary payer fails to reimburse the government." *Id.*

Congress also has created reporting requirements to cut down on fraud and assist with the coordination of benefits. Under § 111 of the Medicare, Medicaid, and SCHIP Extension Act of

---

[1] For Medicaid, regulations make the private insurer the primary payer, and Medicaid the secondary payer. *See, e.g.*, 42 C.F.R. § 433.139. The parties treat the requirements for Medicare the same as those for Medicaid, so we do too.

2007, 42 U.S.C. § 1395y(b)(7)–(8), private insurers must file quarterly reports with the Centers for Medicare & Medicaid Services (CMS). *Allstate*, 106 F.4th at 446. "The reports must identify those beneficiaries seeking coverage for medical expenses from the private insurer who the insurer has determined may also be covered under Medicare." *Id.* Violating § 111 may result in a civil monetary penalty. *Id.* Insurers may file the reports themselves, or they may contract with a third-party, such as defendant Insurance Services Office, Inc. (ISO), to help with the reporting requirements. Section 111 reports "must be made 'regardless of whether or not there is a determination or admission'" that the insurer is liable for the claim. *Id.* (quoting 42 U.S.C. § 1395y(b)(8)(C)).

Perhaps not surprisingly, "[t]his statutory scheme has spawned an industry of compliance, data analytics, and litigation, of which the parties here are emblematic." *Id.* Relator MSP WB, LLC and its affiliated entities seek to identify § 111 violations and unreimbursed conditional secondary payments made by the government or an MAO. Once uncovered, MSP WB sues the primary payers. Relator Michael Angelo "owns and operates a lawyer referral service, as well as health care facilities nationwide, including a medical transportation company, radiology clinics, a pharmacy, and a surgery center." *Id.* at 447.

On behalf of the United States and several states, Relators filed a qui tam action against 316 private insurers (the Insurer Defendants) and ISO. Relators claimed that Defendants engaged in a scheme to defraud the Medicare and Medicaid programs. Asserting a "reverse False Claims Act (FCA)" violation, Relators alleged that the insurers knowingly made false records or statements in violation of § 111 in order to decrease or avoid a payment owed to the government or an MAO. They also raised a conspiracy claim under the FCA, as well as claims under the various state false claims statutes. The federal government and all states declined to intervene.

The Insurer Defendants and ISO moved to dismiss. After a hearing on the motion, but before the district court issued its decision, Relators moved for leave to file a second amended complaint. The district court subsequently granted the motion to dismiss in its entirety and denied Relators' motion for leave to file a second amended complaint. Relators now appeal.

## II.

We review de novo the district court's decision on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *See Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 212 (6th Cir. 2024). To survive a motion to dismiss, "a plaintiff must plead 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Because "the False Claims Act is, at its core, an anti-fraud statute," the "complaint must likewise satisfy Federal Rule of Civil Procedure 9(b)'s requirement that fraud be pled with particularity." *Allstate*, 106 F.4th at 448.

## A.

Relators first challenge the district court's dismissal of their reverse FCA claim against the Insurer Defendants. Relators argue that the Insurer Defendants knowingly made false records or statements in violation of § 111 in order to decrease or avoid payments to MAOs.[2]

A reverse FCA claim is one in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or

---

[2] The parties dispute whether nonpayment or underpayment to MAOs (private contractors), rather than the government itself, can be the subject of a reverse FCA claim. In *Allstate*, the panel noted "our sister circuits' concerns with assigning False Claims Act liability for payments owed to MAOs, which are private entities, and not the government." 106 F.4th at 450. The panel set that issue aside, however, because it wasn't necessary to the resolution of the appeal. *Id.* We do the same here.

decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). In contrast to a prototypical FCA claim, which penalizes a party for falsely obtaining money from the government, a reverse FCA claim is premised on a party's "false or fraudulent effort to avoid a payment owed to the government." *Allstate*, 106 F.4th at 448. "Key components" of the claim "include knowledge and duty." *Id.* "[R]elators must plead, with specificity, that [the insurer] had an established duty, which we have interpreted to mean an affirmative obligation to pay money or property." *Id.* (citations omitted). They must also plead "knowledge, that is, that [the insurer] knew that it violated its established duty to pay." *Id.* at 448–49.

After the district court issued its decision in this case, a panel of this court affirmed the dismissal of a nearly identical reverse FCA claim. In *United States ex rel. Angelo v. Allstate Insurance Co.*, the same relators (MSP WB and Angelo) sued numerous private insurers and ISO, raising the same reverse FCA claim based on analogous purported violations—failing to comply with § 111, resulting in underpayment or nonpayment to the government. *Id.* at 446–47. The panel in *Allstate* concluded that the allegations against Allstate were insufficient to state a reverse FCA claim. *Id.* at 449. As for duty, "the complaint lack[ed] detail as to whether and when Allstate incurred an obligation to pay for medical expenses for which it was liable and, relatedly, what conditional payments were made by Medicare to fill that void." *Id.* Although the complaint alleged "that Allstate denied one exemplar's claims for insurance benefits," it contained "no facts demonstrating that Allstate was responsible for the underlying medical expenses in the first place, let alone facts showing that Medicare made conditional payments for those expenses." *Id.* Nor were the allegations that Allstate and other insurers failed to comply with § 111's reporting requirements sufficient to plead a duty to pay because such reports must be filed regardless of

whether there has been a determination or admission of liability. *Id.* at 450. "In other words, insurers file the reports even when it has not been established that the insurer is the 'primary payer,'" so the "reports do not indicate, with any particularity, that an insurer has a financial obligation to the government." *Id.* As for knowledge, the complaint failed to show "how and when [the insurers were] aware of any conditional payments," "let alone that [they] knowingly evaded [their] duty to pay." *Id.* at 451. For these reasons, the relators' reverse FCA claim failed.

Here, the complaint divides the 316 Insurer Defendants into 14 different groups but provides details regarding the conduct of just 9 insurers. Yet, as the Insurer Defendants note, only 5 of the 9 are named defendants in the case. Comparing the allegations against these five insurers to the allegations made in *Allstate* shows that they are materially identical. They describe the accidents and injuries, allege that the insurers covered the insureds through no-fault policies, and aver that because of the policies, each insurer was "the primary payer responsible for payment and/or reimbursement" of the medical expenses. R. 20, Amended Complaint, PageID 486–503; *United States ex rel. Angelo v. Allstate Ins. Co.*, 2:19-cv-11615, Second Amended Complaint, R. 41, PageID 1089–90. Both complaints allege that each insurer reported the information to ISO and "admitted its primary payer status related to payment/and or reimbursement" and that "[t]his reporting demonstrates that [the insurer] was aware of the accident and its responsibility to reimburse" the insured. R. 20, Amended Complaint, PageID 486–503; *Allstate*, 2:19-cv-11615, Second Amended Complaint, R. 41, PageID 1089–90.

Given that the allegations and examples in *Allstate* are materially identical to the allegations and examples in this case, *Allstate* controls. As in *Allstate*, the complaint here fails to plead with specificity that the insurers were liable for the underlying medical expenses, that Medicare made conditional payments for those expenses, or that the insurers had any obligation to

reimburse the government. "All of these questions need answers before relators can show plausibly that" the insurers were the "primary payer[s], yet failed to make reimbursement payments to Medicare." *Allstate*, 106 F.4th at 450. The complaint also is deficient in pleading knowledge; just as in *Allstate*, Relators do not sufficiently allege that the insurers knew of conditional payments made by Medicare or of their obligation to reimburse Medicare. So *Allstate* requires dismissal of the reverse FCA claim against the five Insurer Defendants for which the complaint provided specific examples of alleged fraud.

Relators attempt to distinguish *Allstate*, explaining that, in this case, they have alleged that the Insurer Defendants "intentionally d[id] not learn of the beneficiaries' Medicare status" and that Relators offer actual insurance contract numbers. Appellants Br. at 45. But that does not distinguish *Allstate*. The complaint in *Allstate* contained similar allegations and information. *See Allstate*, 2:19-cv-11615, Second Amended Complaint, R. 41, PageID 1042 ("Primary Plans cannot avoid their repayment obligations under the MSP statute by willfully blinding themselves to a claimant's Medicare beneficiary status or to the amount that Medicare has paid for care for an individual they know to be a beneficiary."); *id.* at 1089 (providing the contract policy number for the Allstate exemplar). *Allstate* requires dismissal of the claims against the five insurers for whom the complaint provided specific examples of alleged fraud.

What of the claims against the other defendants? Those must be dismissed too. Relators first argue that they were permitted to group some of those defendants with the five defendants for which the complaint provided examples of fraud, as a matter of group pleading. We are skeptical. *See United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 643 (6th Cir. 2003). But that argument is of no consequence, in any event. Because the specific examples of fraud alleged in the complaint against the five defendants were insufficient to state a reverse FCA claim, so are the

generalized allegations against any insurers whom Relators have attempted to group with them. As for the remaining defendants, whom Relators do not attempt to tie to any of the five defendants, Relators say they should have more leeway when pleading fraud against them because discovery hasn't occurred. That, however, is contrary to our caselaw; the generalized allegations were insufficient to meet Rule 9(b)'s pleading requirements and thus to state a reverse FCA claim. *See Bledsoe*, 342 F.3d at 643 (stating that relators "may not rely upon blanket references to acts or omissions by all of the 'defendants'" (citation omitted)); *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 504 (6th Cir. 2007) ("We hold that pleading an actual false claim with particularity is an indispensable element of a complaint that alleges a FCA violation in compliance with Rule 9(b).").

For these reasons, the district court didn't err by dismissing Relators' reverse FCA claim against the Insurer Defendants.[3]

B.

Relators next challenge the dismissal of their conspiracy claim under § 3729(a)(1)(C) of the FCA. To state a conspiracy claim under the FCA, a relator must "plead facts showing that there was a plan or agreement 'to commit a violation of' one or more of the FCA subsections." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 917 (6th Cir. 2017) (quoting 31 U.S.C. § 3729(a)(1)(C)). "[I]t is not enough for relators to show there was an agreement that made it *likely* there would be a violation of the FCA; they must show an agreement was made *in order to* violate the FCA." *Id.* "[R]elators must allege who was [a] party to the agreement, how the agreement was reached, when the agreement was reached, and what were its

---

[3] The district court also determined that the public disclosure bar under 31 U.S.C. § 3730(e)(4) required dismissal of Relators' reverse FCA claim. Because we conclude that Relators failed to allege a reverse FCA claim, we don't address this alternative reason for dismissal.

terms." *Allstate*, 106 F.4th at 452. Relators say they satisfied this standard because they "explicitly alleged that ISO, as the Section 111 reporting clearinghouse for every Insurer Defendant, facilitated each Insurer Defendant's obfuscation of their reimbursement obligations and that each Insurer Defendant enacted policies and procedures, in coordination with ISO, to avoid collecting and reporting (through ISO) the requisite information under Section 111." Appellants Br. at 68 (emphasis omitted).

Dismissal of Relators' conspiracy claim was appropriate for two reasons. First, as stated above, Relators have failed to establish a violation of the FCA. And without an FCA violation, there is no injury and no viable conspiracy claim. *See United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991) (stating that for a FCA civil conspiracy claim, a relator must allege, among other things, "that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant" (citation omitted)). Second, we affirmed the dismissal of a materially similar conspiracy claim in *Allstate*. *See* 106 F.4th at 451–53. And Relators make no attempt to distinguish *Allstate*'s dismissal of the conspiracy claim. For these reasons, the district court didn't err by dismissing Relators' civil conspiracy claim.

C.

Finally, we note that Relators have peppered their briefs with the suggestion that their proffered second amended complaint would have cured any deficiencies in the first. Two problems. Relators don't clearly challenge the district court's decision to deny leave to amend on appeal. *See United States. v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016) (finding forfeited an issue not included either "in the table of contents or in the 'issues presented' section of [the] appellate brief" (quoting Fed. R. App. P. 28(a)(5))). And to the extent they do challenge the district court's decision, they fail to confront the reasons for the district court's decision. Not only did the district

court determine that the proposed amendments would be futile, the court also found that Relators unreasonably delayed in moving to file a second amended complaint and exercised bad faith in so doing. On appeal, Relators do not even mention the court's findings of untimeliness and bad faith. So either way, Relators have abandoned any challenge to the district court's decision to deny leave to amend. *See Castellon-Vogel v. Int'l Paper Co.*, 829 F. App'x 100, 102–03 (6th Cir. 2020) (stating that an appellant abandons a claim if he fails to challenge the district court's conclusion on appeal or if he fails to "confront the district court's reasons for dismissing [his] claims and explain why the court was wrong").

\* \* \*

We AFFIRM.